IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BILL SHUCK and BRAD SHORE,

Plaintiffs,

vs.

Case No. 03-1381-JTM

WICHITA HOCKEY, INC., et al.,

Defendants.

MEMORANDUM AND ORDER

This is an action by plaintiffs Bill Shuck and Brad Shore against their former employer, Wichita Hockey, Inc., (doing business as Wichita Thunder), Central Hockey League, Inc., and the owner of Wichita Hockey, Horn Chen. A portion of plaintiffs' claims (asserting claims such as breach of oral employment contracts) were tried to a jury, which found in favor of defendants on all issues, save that it agreed that defendant Wichita Hockey had failed to pay Shore $3,461 in unpaid commissions. The jury, in response to specific verdict interrogatories by the court, found that the "corporate veil" of Wichita Hockey should not be pierced, and that defendant Horn Chen had not knowingly permitted the withholding of Shore's commissions. (Dkt. No. 77).

The remainder of plaintiffs' claims — asserting violation of their 29 U.S.C. 1161 COBRA rights — were tried simultaneously to the court. Pursuant to Fed.R.Civ.Pr. 52(a), the court makes the following special findings of fact and conclusions of law.

**Findings of Fact**

1. Bill Shuck was employed by Wichita Hockey as its General Manager. In addition to his salary, he received health insurance, at the cost of the employer, from Nippon Life Insurance of America.

2. Brad Shore was employed by Wichita Hockey as its Assistant General Manager and Director of Sales. In addition to a salary and commissions, Shore was furnished health insurance with Nippon at the expense of Wichita Hockey.

3. Wichita Hockey filed bankruptcy on November 30, 2004. No order has been entered lifting the automatic stay.

4. Defendant Horn Chen is the sole owner of Wichita Hockey and Central Hockey League.

5. The corporate existence of Wichita Hockey and Central Hockey League was respected by their owner, Horn Chen. After years of litigation and discovery, involving the investigation into what must be many thousands of business transactions, plaintiffs have been able to point to a handful of minor instances in which the corporate identity was not respected. Significantly, none of the cited instances is related to the COBRA claims involved herein.

6. The court finds credible the testimony of defendant Horn Chen that he attempted to recognize and respect the separate corporate existence of the defendant corporations.

7. Wichita Hockey was the only entity which paid plaintiff Shuck's salary; he was never paid by Horn Chen.

8. Central Hockey was not profitable. It lost over $500,000 in 2002. Wichita Hockey was also unprofitable. Chen periodically advanced loans to Wichita Hockey.

9. Plaintiff Shuck was unable to identify any instance of asset transfers between Central Hockey and Wichita Hockey, other than the transfer of some "hand me down" used computers and office furniture.

10. Chen did not involve himself in any of the day-to-day work of Wichita Hockey, or direct Shuck in how to manage the team.

11. Horn Chen was not the alter ego of Wichita Hockey, and vice versa. Plaintiffs have failed to demonstrate that Central Hockey League, Inc., was the alter ego of Horn Chen.

12. The group health insurance plan with Nippon was a multi-employer plan for teams in the Central Hockey League. The Central Hockey League was designated the Administrator for the plan. Premiums were collected from the teams, including Wichita Hockey, by the Central Hockey League, Inc., and remitted to Nippon. Central Hockey League also processed employee enrollment and discontinuation of benefits, including notification of continuation rights under COBRA.

13. In 2002, Central Hockey League's operations were merged into another professional hockey league, and its offices were closed. Administration of the group health insurance plan was assumed by Ice Hockey, LLC (doing business as "Indianapolis Ice").

14. On November 3, 2002, Chen told Shuck that his employment was terminated. His salary was to be paid through December 2002, and his group health insurance premium was to be paid through May 2003.

15. Defendants did not give Shuck any written notice of his health insurance continuation rights under COBRA.

16. Shuck's health insurance premium was paid through May 2003 by Wichita Hockey. Starting June 1, 2003, Wichita Hockey changed its group health insurance to Preferred Health Systems.

17. In July 2003, Shuck sent a demand to Wichita Hockey seeking penalties and attorney's fees for failure to provide him with a written COBRA notice following his termination of employment.

18. By letter dated September 2, 2003, Shuck was offered the opportunity to participate in the Preferred Health Insurance plan, provided he pay the monthly premium.

19. Shuck did not respond to the September 2, 2003 offer.

20. On October 17, 2003, Shuck had a heart attack and incurred $105,711.16 in medical expenses.

21. In response to Shuck's application for a preliminary injunction, this court ordered Wichita Hockey to procure health insurance for him. That insurance has been provided since December 2003.

22. On November 5, 2002, Express Sports LLC, who had been hired by Wichita Hockey to manage the business after the termination of employment of Mr. Shuck, fired Shore.

23. Wichita Hockey paid Shore's health insurance premium through December 2002.

24. On January 23, 2003, Shore received a written COBRA notice informing him of his continuation rights. He elected not to continue his group coverage.

**Conclusions of Law**

COBRA gives workers the chance to keep their health insurance after they are terminated from their job. 29 U.S.C. § 1161. When the worker is terminated (one of COBRA's "qualifying

events"), the employer must notify the plan administrator within 30 days. 29 U.S.C. § 1166(a)(2). The administrator must, within 14 days of this notice, tell the former employee of her opportunity to keep the group health care insurance. 29 U.S.C. § 1166(a)(4). The Act requires that the notice be in good faith and reasonable in nature; it does not require notice in writing, specifying the information that must be conveyed. *Smith v. Rogers Galvanizing Co.*, 128 F.3d 1380, 1383-4 (10th Cir. 1997).

Plaintiffs' attempt to impose COBRA liability on defendant Horn Chen, the owner of Wichita Hockey, is without merit, the court finding no basis for piercing the corporate veil of either Wichita Hockey or Central Hockey League, Inc.

Chen was not the employer of either plaintiff, and was not the designated administrator of the group health insurance plan. COBRA defines "employer" as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan." 29 U.S.C. 1002(5). An "administrator" under COBRA is "the person specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C. 1002(16). COBRA does not contemplate the existence of a de facto administrator, where the administrator has been explicitly designated in the Plan. *McKinsey v. Sentry Ins.*, 986 F. 2d 401, 404-5 (10th Cir. 1993).

The issue of whether to pierce a corporate veil in the context of a claim for COBRA liability raises a question of federal common law rather than state law. *In re Shelby Yarn Co.*, 306 B.R. 523 (W.D.N.C. 2004). *See Mandeville v. Quinstar Corp.*, No. 02-3267, 2004 WL 1571087 (10th Cir. 2004).

The veil of a corporation may be pierced if the evidence establishes

> (i) was there such unity of interest and lack of respect given to the separate identity of the corporation by its shareholders that the personalities and assets of the corporation and the individual are indistinct, and (ii) would adherence to the corporate fiction sanction a fraud, promote injustice, or lead to an evasion of legal obligations.

*NLRB v. Greater Kan. City Roofing*, 2 F.3d 1047, 1052 (10th Cir.1993). *Cf. Massachusetts Laborers' Health and Welfare Fund v. Starrett Paving Corp.*, 845 F.2d 23 (1st Cir. 1988); Sasso v. Cervoni, 985 F.2d 49 (2nd Cir. 1993); *Boilermaker- Blacksmith National Pension Fund v. Gendron*, 96 F. Supp. 2d 1202, 1217 (D. Kan. 2000).

Plaintiffs have failed to show by a preponderance of the evidence either prong of this test: failing to show either that the Chen-related entities had failed to maintain distinct personalities, or that maintenance of corporate personality would work injustice to plaintiffs.

Shuck and Shore were employed by Wichita Hockey. The designated administrator of the Nippon plan was Central Hockey League. Neither Wichita Hockey nor Central Hockey League was the alter ego of Horn Chen. Horn Chen should have judgment on the claims of the plaintiffs.

Ice Hockey, L.L.C. was not the employer of either plaintiff, nor was it the designated administrator of the health insurance plan. Accordingly, Ice Hockey, L.L.C. should have judgment on the claims of the plaintiffs.

Central Hockey League as administrator of the Nippon plan failed to give notice to Shuck of his rights of continuation of coverage. Central Hockey League is liable to Shuck for any unpaid medical expenses incurred by him subsequent to his employment termination on November 3, 2002, plus penalties and attorney's fees.

Central Hockey League, Inc., gave Shore an appropriate COBRA notice 74 days after the termination of his employment, or 23 days after Wichita Hockey's last payment of his health

insurance premium. There was no evidence of unpaid medical expenses. Although the notice may have been late, the court declines to assess any penalty or award attorney's fees for this oversight.

IT IS ACCORDINGLY ORDERED this 15th day of February, 2005, that judgment is granted in favor of defendants Horn Chen and Ice Hockey, L.L.C. on the COBRA claims of both plaintiffs Shuck and Shore. Judgment is granted in favor of defendant Central Hockey League as to the claim of defendant Shore. Judgment is granted in favor of plaintiff Shuck as to his unpaid medical expenses against defendant Central Hockey League.

s/ J. Thomas Marten<br>
J. THOMAS MARTEN, JUDGE